UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JIMMIE O. ROBINSON, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>DIANA CONTAINERSHIPS, INC, SYMEON P. PALIOS, KALANI INVESTMENTS LIMITED, MURCHINSON LTD., and MARC BISTRICER,<br><br>Defendants. | Case No.: 2:17-cv-06160-BMC |

**SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF
KALANI INVESTMENTS LTD., MURCHINSON LTD., AND MARC BISTRICER'S
<u>MOTION TO DISMISS</u>**

SCHULTE ROTH & ZABEL LLP

Peter H. White (admitted *pro hac vice*)
Noah N. Gillespie

901 15th Street NW, Suite 800
Washington, DC  20005
(202) 729-7470

*Attorneys for Kalani Investments Ltd.,
Murchinson Ltd., and Marc Bistricer*

On January 26, 2017, Diana announced that it planned to issue up to $250 million in new common stock—almost ten times the amount of shares then outstanding. TAC ¶ 35; ECF 148-6 at 3, 21. Diana warned that this could result in dilution. ECF 148-6 at 12-13. Nearly three months later, in March 2017, Diana announced its one and only financing transaction with Kalani the day it was signed and before Kalani sold a single share. TAC ¶¶ 6, 36, 101, 106, 128. Kalani paid $3 million up front and had the right to purchase up to $150 million of common stock in total. TAC ¶¶ 35-36. Diana had previously announced in January 2016 that it "intends to complete a reverse stock split," which it did not perform until June 2016. ECF 148-3 at 4; TAC ¶ 34. Diana conducted additional reverse splits in 2017 but the SPA with Kalani continued into 2020 without any further reverse splits. TAC ¶ 94.

Plaintiffs' claims continue to center on reverse splits but mischaracterize what reverse splits do. A reverse split combines a set number of shares into a single share with a proportionately greater value. In that regard, the new share trades at a higher price, TAC ¶¶ 32-34, but this does not affect the total value of any shareholder's holdings, Mot. (ECF 147) at 4-5. Accordingly, the connection Plaintiffs attempt to draw between the reverse splits and Kalani's sales makes no sense. Plaintiffs contend that Kalani sold after reverse splits to take advantage of the increased stock price, but this is impossible. TAC ¶ 64. Every $10 of Diana stock that Kalani held before a reverse split was worth exactly $10 after that split. *Id.* The reverse splits had no impact on Kalani's potential profits and had no correlation with when it sold. *Id.* Moreover, the reverse splits did not reduce the risks Kalani incurred in extending financing to Diana. *Id.* at 3-5.

Plaintiffs concede they make no claim based on dealer registration or short sale regulation. Supp. Opp. (ECF 169) at 6. Instead, they ground their claims in the one SPA and the

1

reverse splits. As all of these were fully disclosed to the investing public, they state no claim for fraud or manipulation. *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 130 (2d Cir. 2011); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 100-02 (2d Cir. 2007).

Admitting these disclosures, Plaintiffs contend that some "Undisclosed Agreement" lurked behind them. But to meet the pleading standard under the PSLRA, Plaintiffs have to show a strong inference of scienter that "must be more that merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Plaintiffs' claims here could not satisfy even the more lenient Rule 8 pleading standard. Allegations of illegal agreements are implausible and conclusory where, as here, "there is no reason to infer that the companies had agreed among themselves to do what was only natural anyway." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566 (2007). The inference that Diana conducted reverse splits in its own business judgment to maintain the $1.00 Nasdaq listing minimum and that Kalani sought a return on its investment like any investor or financier is far more compelling than Plaintiffs' conclusory claims. As in *Top Ships*, the illogical assertion that "defendants' failure to disclose at the outset that they were undertaking a manipulative scheme transformed their transactions into a manipulative scheme" fails to state a claim. *Onel v. Top Ships, Inc.*, 806 F. App'x 64, 67 (2d Cir. 2020). As in *Top Ships*, the TAC must be dismissed.

Plaintiffs rely on *Set Capital LLC v. Credit Suisse Group AG*, 996 F.3d 64 (2d Cir. 2021), but that decision supports dismissal here. Unlike this case, *Set Capital* involved no reverse splits and no alleged short sales. Rather than the common stock financing transactions at issue here and in *Top Ships*, *Set Capital* involved manipulative trading in derivative instruments by a single entity that occurred in just 15 minutes of after-hours trading. *Id.* at 69-70, 73-74.

2

Diana and Kalani, by contrast, acted at arms' length pursuant to a publicly disclosed agreement to provide Diana the financing it needed to stay afloat. As Plaintiffs repeatedly emphasize in the TAC, the transactions in *Top Ships* are "strikingly similar" to the one financing transaction that Kalani entered into here. TAC ¶ 6; *see also id.* ¶¶ 32, 76-77, 81, 144.

Further, the plaintiffs in *Set Capital* identified specific misstatements Credit Suisse made to the investing public. For example, Credit Suisse stated that it had "no reason to believe" that its trading practices would be "material" when three prior trading episodes caused liquidity incidents that led an internal committee to recommend a different practice. *Id.* at 78-79. In addition, after Credit Suisse recalled the instruments, its CEO stated that Credit Suisse made this decision because the instruments had "stopped trading," when in fact trading had continued. *Id.* In *Top Ships*, the Second Circuit distinguished similar authority that "importantly included specific allegations of nondisclosure . . . [by] defendant Credit Suisse." *Top Ships*, 806 F. App'x at 68 n.3. In *Top Ships*, as here, "Plaintiffs make no similar allegation concerning the defendants' disclosure of the transactions' terms, and thus they fail to state a claim of manipulation." *Id.* Any "broader proposition concerning the viability of market manipulation claims against similar 'schemes' without more specific allegations of nondisclosure" cannot "withstand[] our precedents, including *ATSI* and *Wilson*." *Id.*

There are no specific allegations of nondisclosure in the TAC, and no evidence at all of manipulative intent. Plaintiffs only perfunctorily defend their conclusory misstatement claims in their supplemental opposition brief. Supp. Opp. at 8, 11. Plaintiffs acknowledge that the SPA included in Diana's disclosures plainly stated that Kalani could sell "long and/or short" anytime. *Id.* at 8; TAC Ex. C at 21. "The market is not misled when a transaction's terms are fully disclosed." *Wilson*, 671 F.3d at 130. Moreover, to be actionable, the misrepresentation or

3

nondisclosure must deceive "investors as to how other market participants have valued a security." *ATSI*, 493 F.3d at 100. The marking of sale orders has nothing to say about their value. As the factual allegations of the TAC establish, Kalani sold on the open market and Kalani ultimately delivered every share. TAC ¶¶ 6, 42-43, 52. The factual allegations in the TAC are thus fatal to Plaintiffs' manipulation, misstatement, and omission claims. *Top Ships*, 806 F. App'x at 67. Accordingly, there was no. *Id.* The hollow assertion of an Undisclosed Agreement cannot save the TAC. "Nowhere do Plaintiffs plead with the requisite particularity that there was any such agreement." *Id.* at 68.

These adequate disclosures defeat Plaintiffs' secondary liability claims as well. *Id.* at 69. Plaintiffs' contention that these Defendants did not "renew" certain arguments is inaccurate and overlooks that these Defendants elected to stand on their prior briefing and submit tailored supplemental briefs. *Compare* Supp. Opp. at 11, *with* Mot. at 17-19; ECF 163. The Court need not reach these independent bases for dismissal because the TAC fails to state a claim against any of these Defendants.

## Conclusion

The Second Circuit's controlling decision in *Top Ships* compels dismissal of the TAC with prejudice. In *Top Ships*, as here, the sole SPA and "the complained-of reverse stock splits" were all "fully disclosed to the market." *Top Ships*, 806 F. App'x at 66-67. It is time to dismiss Plaintiffs' claims with prejudice.

Dated: November 5, 2021
Washington, D.C.

        SCHULTE ROTH & ZABEL LLP

        By:   /s/ *Peter H. White*

        Peter H. White (admitted *pro hac vice*)
        Noah N. Gillespie

        901 15th Street NW, Suite 800
        Washington, DC  20005
        (202) 729-7470

        *Attorneys for Kalani Investments Ltd.,*
        *Murchinson Ltd., and Marc Bistricer*